UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES
MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

March 31, 2021

LETTER TO COUNSEL

     RE:    *Grant D. v. Saul*
              Civil No. DLB-19-3102

Dear Counsel:

On October 24, 2019, plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny his claim for Disability Insurance Benefits. ECF 1. I have considered the parties' cross-motions for summary judgment and plaintiff's response. ECF 14 ("Pl.'s Mem."), ECF 16 ("Def.'s Mem."), ECF 17 ("Pl.'s Reply"). I find no hearing necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the denial if the SSA employed correct legal standards in making findings supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny plaintiff's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff filed his claim for benefits on June 21, 2016, alleging an onset date of October 25, 2015. Administrative Transcript ("Tr.") 197-98. The SSA denied his claim initially and on reconsideration. Tr. 113, 125. An Administrative Law Judge ("ALJ") held a hearing on August 7, 2018. Tr. 51-103. Following the hearing, the ALJ determined plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 34-46. Because the Appeals Council denied plaintiff's request for review, the ALJ's decision constitutes the final, reviewable decision of the SSA. Tr. 1-4; *see Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); 20 C.F.R. § 422.210(a).

The ALJ found that plaintiff was severely impaired by "degenerative disc disease of the lumbar spine, status post lumbar laminectomy[,] and [L]yme disease." Tr. 39. Despite these impairments, the ALJ determined plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except that he can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and

*Grant D. v. Saul*
Civil No. DLB-19-3102
March 31, 2021
Page 2

> occasionally balance, stoop, kneel, crouch[,] and crawl.  [Plaintiff], additionally, can never work at unprotected heights.

Tr. 40.  After considering the testimony of a vocational expert ("VE"), the ALJ determined plaintiff could not perform his past relevant work as a letter carrier but could perform jobs existing in significant numbers in the national economy.  Tr. 44-45.  Therefore, the ALJ concluded plaintiff was not disabled.  Tr. 45-46.

On appeal, plaintiff argues the ALJ's decision fails to comply with the special technique regulation, 20 C.F.R. § 404.1520a.  Pl.'s Mem. 8-15; Pl's Reply 2-4.  The Commissioner argues the ALJ properly evaluated plaintiff's alleged mental impairments.  Def.'s Mem. 4-10.  Because I agree with the Commissioner that, to the extent plaintiff alleged any mental impairments, the ALJ's failure to discuss them was not in error because the evidence did not establish the existence of a medically determinable mental impairment during plaintiff's alleged period of disability, the ALJ's decision is affirmed.

The SSA has established regulations setting forth the procedure for evaluating physical and mental impairments. *See* 20 C.F.R. § 404.1520.  In addition to that procedure, when the SSA "evaluate[s] the severity of mental impairments for adults[,]…[the agency] must follow a special technique at each level in the administrative review process." *Id.* § 404.1520a(a).  The SSA evaluates the claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [the claimant] ha[s] a medically determinable mental impairment(s)." *Id.* § 404.1520a(b)(1) (cross-referencing 20 C.F.R. § 404.1521).  Medically determinable impairments "must result from anatomical, physiological, or psychological abnormalities that can be show by medically acceptable clinical and laboratory diagnostic techniques [and] must be established by objective medical evidence from an acceptable source." *Id.* § 404.1521.  A claimant's "statement of symptoms, a diagnosis, or a medical opinion" will not be used to establish a medically determinable impairment. *Id.*  If the SSA determines the claimant has "a medically determinable mental impairment(s), [the agency] must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [its] findings in accordance with paragraph (e)" of the special technique regulation. *Id.* § 404.1520a(b)(1).  The agency "must…rate the degree of functional limitation resulting from the impairment(s)." *Id.* § 404.1520a(b)(2).

The special technique regulation imposes upon the agency special duties with respect to documenting the technique's application.  As relevant to plaintiff's claim on appeal, the regulations provide:

> …the written decision must incorporate the pertinent findings and conclusions based on the technique.  The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s).  The decision must include a specific finding as to the degree of limitation in each of the functional areas….

*Id.* §§ 404.1520a(e)(4), 416.920a(e)(4); *see Patterson v. Cmm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) ("The regulation specifically provides that the ALJ must document all of the special technique's steps.").

Plaintiff argues the ALJ erred under the special technique regulation by failing to document his assessment of the mental impairments that "[p]laintiff specifically alleged [caused his] disability[,]" including, "[u]nderstanding and memory limitations, sustained concentration and persistence limitations, and insomnia." Pl.'s Mem. 9 (internal quotation marks omitted) (internal citations omitted). Plaintiff also argues the ALJ erred by failing to document his assessment of the depression and anxiety to which plaintiff testified at the hearing and to which plaintiff argues his disability is due in part. *Id.*

The Commissioner disagrees and argues "the evidence does not indicate that [p]laintiff had a medically determinable mental impairment during the relevant period" and that "[i]t is only after [the SSA] find[s] a claimant has a medically determinable mental impairment and specifies the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) that we then rate the degree of functional limitation using the 'special technique.'" Def.'s Mem. 4 (citing 20 C.F.R. § 404.1520a).

Plaintiff argues that "whether an impairment is medically determinable is itself part of the special technique." Pl.'s Mem. 13-14; Pl.'s Reply 2-3 (citing *Charlene S. v. Cmm'r, Soc. Sec. Admin.*, No. ADC-19-2185, 2020 WL 3488911, at *4 (D. Md. June 26, 2020)). Further, plaintiff argues remand is appropriate because the ALJ "never acknowledged [his] mental impairments . . . and never conducted the requisite special technique analysis." Pl.'s Reply 3-4 (citing *Patterson*, 846 F.3d at 661-62; *Davis v. Astrue*, No. 5:10CV72, 2011 U.S. Dist. LEXIS 83200 (N.D. W. Va. July 28, 2011); *Kawani L. v. Saul*, No. BPG-18-2420, 2019 U.S. Dist. LEXIS 232701 (D. Md. Nov. 6, 2019)).

At the outset, I disagree with plaintiff that *Charlene S.*, in which this Court noted that "discussing whether an impairment is medically determinable is itself part of the special technique," suggests remand is appropriate in this case. In *Charlene S.*, the Court initially noted that "*[w]hen a claimant alleges a mental impairment*, the ALJ must first determine whether the impairment is medically determinable." *Id.* (citing 20 C.F.R. § 404.1520a(b)(1)) (emphasis added). Thus, even if *Charlene S.* supplied the appropriate rule, under that case's reasoning, the plaintiff must first allege a mental impairment. If a plaintiff has not alleged a mental impairment, as plaintiff has not done here, *see infra* 4-5, the ALJ's duty would not be triggered. Second, and as the Commissioner argues, it is not clear that "discussing whether an impairment is medically determinable is itself part of the technique" such that the ALJ is required to document the process in the decision where he concludes no medically determinable impairment exists. *See* Def.'s Mem. 4. The special technique regulation provides: "If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section." 20 C.F.R. § 404.1520a(b)(1). Thus, both the specification of the substantiating evidence and the documentation of the finding of a medically determinable mental

*Grant D. v. Saul*
Civil No. DLB-19-3102
March 31, 2021
Page 4

impairment are conditional upon the SSA's determination that the plaintiff has a medically determinable impairment.

None of the authority from courts of appeals plaintiff cites in support of his argument that the ALJ's failure to document application of the special technique requires remand lends assistance to his claim. None of those cases squarely address the precise issue of the sufficiency of a plaintiff's allegations of a mental impairment and the impact of deficient allegations on an ALJ's duty under 20 C.F.R. § 404.1520a. *See* Pl.'s Mem. 11-12 (internal citations omitted). *Patterson* is not instructive in this case because, in *Patterson*, the SSA conceded the ALJ erred in not rating the plaintiff's limitations in the four functional areas after he found the plaintiff established the medically determinable mental impairment of borderline intellectual functioning. 846 F.3d at 658, 660, 662. The Fourth Circuit considered only whether an error under such circumstances was harmless. *Id.* at 657. The Eleventh, Tenth, and Ninth Circuit decisions likewise do not hinge on the sufficiency of the plaintiffs' allegations of mental impairments because in those cases the plaintiffs did allege medically determinable mental impairments. *See Moore v. Barnhart*, 405 F.3d 1208, 1210 (11th Cir. 2005) (per curiam) ("In February 1991, Moore applied for DIB, claiming disability from . . . depression."); *Shivel v. Astrue*, 260 F. App'x 88, 89 (10th Cir. 2008) ("Mr. Shivel filed his application for benefits in November of 2001. He claimed disability . . . from . . . paranoid schizophrenia, depression, anxiety, and a personality disorder."); *Selassie v. Barnhart*, 203 F. App'x 174, 175-76 (9th Cir. 2006) (considering an appeal of a cessation of benefits after the plaintiff previously "was granted a period of disability benefits . . . with a primary diagnosis of schizophrenia").

In this case, plaintiff did not allege he had any mental impairments. Rather, plaintiff alleged disability caused by "chronic [L]yme disease, degenerative disc disease, [and] spinal stenosis." Tr. 215 (plaintiff's June 25, 2016 disability report), 254 (plaintiff's January 4, 2017 disability report); *see also* Tr. 218 (indicating plaintiff reported he did not see a doctor or health care professional, receive treatment, or have any future appointments scheduled for any mental conditions); Tr. 255 (indicating plaintiff reported medical treatment for "physical" conditions since his previous function report). Further, the testimony of plaintiff's representative confirms plaintiff alleged disability based on physical impairments:

> ALJ: . . . counsel and I will go through the impairments together.
> [Representative ("Rep.")]: Okay.
> ALJ: . . . So, counsel, I'm going to pull up my notes and take a look at what I have. . . . I have—my note—my handwritten notes are they've got Lyme disease, [degenerative disc disease], and spinal stenosis. What else is—did I miss anything?
> [Rep.]: You hit the nail on the head. The ancillaries, your honor, are—you know—obviously chronic pain medication side-effects, malaise, fatigue, those things that come with it. But Lyme would be the predominant, lumbar—
> ALJ: Oh. And then, they called it a C-I-R-S—chronic inflammatory response syndrome—
> [Rep.]: That's well-put, your honor.
> ALJ: —secondary to the Lyme. Okay.

> [Rep.]: Yes, sir. And then, there is obviously, pain and dysfunction due to the radiculopathy, both lumbar and cervical.
> ALJ: Okay. And then, the cervical spine I've got at 10F. And, is there—oh—and the lumbar is 2F, page six.
> [Rep.]: Correct. . . .

Tr. 56-57. Thus, at the three critical moments in which plaintiff stated the medical impairments underlying his application for DIB, he identified not only none of the mental "impairments" he now raises on appeal but also no mental impairments whatsoever. Because "[t]he special-technique regulation affects how an ALJ evaluates and documents his process at steps [one] through [four] *if the claimant alleges* a mental impairment," *Patterson*, 846 F.3d at 659 (internal citation omitted) (emphasis added), the ALJ did not err in his application of the special technique. *See Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) (holding that an ALJ did not err in failing to assess the plaintiff's mental impairment where the plaintiff "did not list any mental impairment or intellectual functioning issues in his application for SSI benefits, nor did he testify at his hearing that he suffered from any intellectual or mental impairments that would prevent him from working"); *Partee v. Astrue*, 638 F.3d 860, 864 (8th Cir. 2011) ("Some of the factors an ALJ may consider when determining a claimant's mental impairments are (1) the claimant's failure to allege mental impairments in his complaint, (2) failure to seek mental treatment, (3) the claimant's own statements, and (4) lack of medical evidence indicating mental impairment. Partee did not allege a mental impairment on his application for benefits. Except for Dr. Smith, Partee did not see anyone regarding a mental impairment. Partee did not report to Dr. Bunting any history of mental or emotional problems that interfere with his working. Dr. Smith determined Partee was only mildly dysthymic, and Dr. Bunting did not mention any signs of depression or severe mental impairment during her session with Partee. As a result, we find the ALJ's determination that Partee did not suffer from a debilitating mental impairment is supported by substantial evidence in the record as a whole."); *Rodriguez v. Sec. of Health & Human Servs.*, 46 F.3d 1114 (table), 1995 WL 45781, at *4, n.14 (1st Cir. 1995) (per curiam) ("20 C.F.R. § 404.1520a(b)(2) provides that the SSA must indicate whether certain medical findings relevant to the ability to work are present or absent only '[i]f w [i.e., the SSA] determine that a mental impairment exists.' If there is insufficient evidence that a mental impairment exists, there will be presumably . . . no medical findings which would allow the SSA to complete the standard [document].") (discussing an earlier version of the special technique regulation that required the ALJ to complete a standard document, which the current regulation no longer requires, *see* Federal Old-Age, Survivors, and Disability Insurance; Listing of Impairments—Mental Disorders, 50 Fed. Reg. 35038-01, 35065 (Aug. 28, 1985)).

Plaintiff's failure to specifically allege a medically determinable mental impairment at the critical stages of his application notwithstanding, he now cites scattered records in the transcript he maintains constitute his allegation of medically determinable mental impairments. None of the records plaintiff identifies render the ALJ's decision unsupported by substantial evidence or based on incorrect legal standards. 42 U.S.C. § 405(g); *see* Tr. 15-19, 25-32 (containing records from after the ALJ's date of decision); Tr. 120, 240, 712 (discussing the cognitive "impairments" plaintiff now alleges as but mental limitations resulting from plaintiff's Lyme disease, which the

ALJ considered); Tr. 71-74 (containing testimony from plaintiff that he experienced depression and anxiety but establishing plaintiff never sought out mental health treatment, could "ride out" the periods when those "conditions" hit him, and never took medication for these "conditions"); Tr. 244 (containing plaintiff's treating physician's check-the-box statement that plaintiff experienced depression as a symptom of his Lyme disease but not indicating plaintiff was diagnosed with depression, in comparison to chronic fatigue syndrome, which the physician did identify as a diagnosis in addition to plaintiff's Lyme disease); Tr. 642, 646, 694 (showing plaintiff indicated a history of depression or anxiety but noting no psychiatric abnormalities on examination or any reference to then-present mental illness); Tr. 23 (containing a record from October 12, 2018, which the Appeals Council declined to consider due to the ALJ's decision being rendered on October 12, 2018, but in any case identifies depression as a side effect of a medication plaintiff took but not diagnosing plaintiff with any mental illness or observing any psychological abnormalities on exam).

As to plaintiff's allegation that the record contains evidence of insomnia, I agree. *See* Pl.'s Mem. 9-10; Pl.'s Reply 2; Tr. 259, 269, 385-89, 551-52, 556, 655-58 (indicating generally plaintiff was diagnosed with insomnia and was prescribed medication for his inability to sleep, including his "use of effective Melatonin," Ambien, and Silenor "for difficult staying asleep"). In this case, however, plaintiff clearly advanced a theory of disability based upon physical impairments. Indeed, the ALJ asked plaintiff's representative at the hearing whether he had a complete list of all asserted impairments, and plaintiff's representative agreed that the ALJ was aware of all the alleged impairments. *See* Tr. 56-57. Insomnia was not one of the impairments the ALJ and plaintiff's representative listed. *See* Tr. 56-57. Plaintiff himself clearly referenced insomnia as a symptom of his Lyme and post-Lyme disease. *See* Tr. 67, 85. Further, plaintiff testified that his Lyme treatment was successful and that, at the time of the hearing on August 7, 2018, it was "just . . . the . . . post-Lyme symptoms that have . . . taken effect." Tr. 67. The ALJ asked, "What are the post-Lyme symptoms?" Tr. 67. Plaintiff responded, in relevant part, "I still have the insomnia." Tr. 67. Later, the ALJ asked if there was "anything else that [he] missed—physically." Tr. 71. Plaintiff replied, "Physically, well, the insomnia definitely affects my other symptoms, which I have—you know—quite a bit." Tr. 71.

Plaintiff's representative asked him which medications he had to take when he was "really having a bad day." Tr. 85. Plaintiff responded:

> Well, if I—it's the—when I have insomnia, like sometimes it'll kick in and I'm only getting like an hour, two hours of sleep at night. The next day, I'll take a—you know—a sleep aid to help me. But the day after—and it does help. It does help on occasion; not every time, but it does help. I'll—that day—you know—if—you know—it's not just time I'm sleeping; it'll—I can go—you know—you know—eight, 10 hours where I'm just groggy and not really—you know—focused.

Tr. 85. And, in this case, the ALJ considered plaintiff's Lyme disease and its symptoms:

> Lyme disease symptoms have been considered within this section and found not to impact any body system to a degree that equals a heightened level of severity of any particularly [sic] listing, either singly or in combination. Its limitations are considered below and reflected in the determined residual functional capacity.

Tr. 40. And, as appropriate, the ALJ considered the functional limitations resulting in part from plaintiff's insomnia, including fatigue, during the analysis of plaintiff's RFC. *See* Tr. 41 (discussing plaintiff's residual fatigue); Tr. 41 (discussing plaintiff's conditions as "amenable to practical medical management and control," which comports with treatment notes indicating Melatonin was effective for falling asleep, plaintiff's own testimony that the medication helped even if not every single time he takes it, and appointments at which plaintiff denied having symptoms of insomnia or did not mention issues with sleep); Tr. 41 (discussing plaintiff's symptoms of fatigue, which were associated with chronic inflammatory response syndrome likely secondary to Lyme disease); Tr. 42 (discussing plaintiff's denial of fatigue at certain pain management appointments); Tr. 42 (discussing plaintiff's increasing tolerance for physical activity); Tr. 42-43 (discussing plaintiff's complaints of the cognitive issues related to plaintiff's Lyme disease and plaintiff's ability to perform activities of daily living); Tr. 43 (discussing Dr. Vickers' medical opinion, which was provided before plaintiff was fully treated for the Lyme disease, and identifying the activities of daily living plaintiff could now do having been treated for Lyme and which were inconsistent with Dr. Vickers' opinion). Thus, the ALJ did consider plaintiff's insomnia and its effects on his functioning as part of plaintiff's Lyme and post-Lyme symptoms.

Plaintiff argues this case is analogous to *Davis v. Astrue*, No. 5:10CV72, 2011 U.S. Dist. LEXIS 83200 (N.D. W. Va. July 28, 2011), but several facts distinguish plaintiff's appeal from the one before the court in *Davis*. *See* Pl.'s Mem. 12-13; Pl.'s Reply 3-4. First, in *Davis*, the Court observed that, "[s]ignificantly, the plaintiff . . . was represented by a non-attorney representative." 2011 U.S. Dist. LEXIS 83200, at *14. In this case, plaintiff was represented by an attorney. *See* Tr. 54, 131 (indicating Mr. Tim Driscoll, who represented plaintiff at the hearing, is an attorney). Thus, unlike in *Davis*, where the Court noted the ALJ's "heightened duty to develop the record . . . when the claimant is represented by a non[-]attorney representative," here the ALJ had no such duty—if one exists—because plaintiff was represented by an attorney. 2011 U.S. Dist. LEXIS 83200, at *15. Second, while in *Davis* the plaintiff also did not mention the relevant mental impairment in any of his disability application materials, the ALJ in that case "fail[ed] to consider the numerous indications of the plaintiff's" mental impairment. 2011 U.S. Dist. LEXIS 83200, at *10-13. In this case, however, the ALJ did consider plaintiff's allegations of mental limitations. He considered them exactly as plaintiff presented them to the agency: as symptoms of his overarching condition, Lyme disease, during the RFC analysis. *See* Tr. 67, 71, 85; Tr. 41-43.

Plaintiff's argument that this case is analogous to *Kawani L.* is similarly unavailing. *See* Pl.'s Mem. 14; Pl.'s Reply 3; 2019 U.S. Dist. LEXIS 232701. In *Kawani L.*, the plaintiff alleged disability due in part to a mental impairment, and the ALJ in that case found the plaintiff's mental impairment was not medically determinable for legally insufficient reasons. 2019 U.S. Dist. LEXIS 232701, at *18-23 ("The ALJ was on notice of plaintiff's claim of mental impairment, as

*Grant D. v. Saul*
Civil No. DLB-19-3102
March 31, 2021
Page 8

plaintiff alleged she was 'partially disabled by depression with issues involving concentration and memory.'"). The ALJ "falsely asserted that there were no cognitive tests in the record" substantiating the plaintiff's alleged mental impairment, and the Commissioner conceded the ALJ "overlooked" the plaintiff's cognitive testing. *Id.* at *21. The plaintiff had submitted treatment records evidencing abnormal cognitive testing. *Id.* at *22. In this case, plaintiff did not allege disability—in whole or in part—due to a mental impairment. *See* Tr. 55-56; 215, 254. Additionally, the ALJ did not misrepresent the facts about plaintiff's medical record. Rather, the ALJ merely considered plaintiff's insomnia and associated functional limitations as part of his analysis of plaintiff's overarching physical impairment, as plaintiff argued the insomnia was. *See* Tr. 67 (showing that the ALJ asked, "What are the post-Lyme symptoms?" and plaintiff responded, in relevant part, "I still have the insomnia").

In this case, unlike in *Davis* and *Kawani L.*, the ALJ did not overlook plaintiff's allegations of difficulty sleeping and the associated effects of fatigue and mental grogginess. Rather, the ALJ folded that discussion into the larger discussion of plaintiff's Lyme and post-Lyme functional limitations. Plaintiff framed his application around his physical impairments. The ALJ made two independent inquiries into the possibility of mental impairments, even though plaintiff did not allege any mental impairments in his application. *See* Tr. 56-57, 71-74. Neither plaintiff nor his counsel identified any medically determinable mental impairment at either opportunity.

Ultimately, the law confines my review to whether the ALJ employed correct legal standards in making factual findings supported by substantial evidence. *Craig*, 76 F.3d at 589. Inherently limited in scope, substantial evidence review asks only whether the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971). The inquiry is therefore not whether I agree with the ALJ's conclusions but whether "more than a mere scintilla" of evidence supports them. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). On the record before me, I find the ALJ applied correct legal standards and made findings supported by substantial evidence.

For the reasons set forth herein, plaintiff's motion for summary judgment, ECF 14, is denied, and defendant's motion for summary judgment, ECF 16, is granted. The SSA's judgment is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Despite the informal nature of this letter, it should be flagged as an opinion. A separate order follows.

Sincerely yours,

/s/

Deborah L. Boardman
United States Magistrate Judge